UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| SAMUEL LANIER, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] 7:09-CV-01998-LSC |
| | ] |
| CITY OF TUSCALOOSA, et al., | ] |
| | ] |
| Defendant. | ] |
| | ] |
| | ] |
| | ] |

MEMORANDUM OF OPINION

I.   Introduction.

This Court has for consideration a Motion to Re-Instate, filed on February 23, 2010, by Samuel Lanier ("Lanier"). (Doc. 34.) Plaintiff brings this motion in response to this Court's granting of Defendants' motion to dismiss on January 26, 2010. (Doc. 30.) Plaintiff brought the original complaint pursuant to 42 U.S.C. § 1983 alleging unlawful arrest, failure to prevent constitutional abuse, and municipal liability. (Doc. 1.) The complaint further alleged state law claims for false arrest, unlawful imprisonment, assault, and harassment as well as a respondeat superior

theory of liability. *Id.* This Court granted the motion to dismiss because Plaintiff's original complaint failed adequately to plead facts to meet the heightened standard required for 42 U.S.C. § 1983 claims. (Doc. 30.) The amended complaint, albeit phrased differently, alleges the same conduct as the first complaint. (Doc. 34.) Upon due consideration and for the same reasons the first motion to dismiss was granted, the motion to reinstate is DENIED.

II.  Background.

In response to Plaintiff's original complaint, Defendants Melvin Green and Mark Whittle ("Green" and "Whittle") filed a motion to dismiss with this Court on November 17, 2009. (Doc. 8, 11.) On December 3, 2009, Defendant City of Tuscaloosa ("Tuscaloosa") filed a motion to dismiss. (Doc. 12.) On January 23, 2010, this Court granted Defendants' motions to dismiss Lanier's claims on qualified immunity grounds. (Doc. 30.)

On February 23, 2010, Lanier petitioned this Court to re-instate his claim pleading more specific facts to support his claims. (Doc. 34.) However, the facts alleged in the new complaint are essentially the same as those in the original complaint (Doc. 1) except that the new complaint

provides affidavits from those involved which provide more detail as to the incident that occurred on October 7, 2007, at the Tuscaloosa Police Department. (Doc. 34.) The original complaint alleged that the Tuscaloosa Police handcuffed Mr. Lanier when he entered the station on October 7, 2007, that the police called his sister to come get him, and that he was released without being charged. Lanier alleged that this handcuffing incident caused him mental anguish and was an unlawful imprisonment. (Doc. 1.)

The new complaint adds to these previous allegations with statements from the police officers involved in the incident. (Doc. 34.) For instance, Officer Green told both Mr. Lanier and his sister, Katie Barber, that Mr. Lanier appeared drunk. *Id.* at 9-10. Officer Green further explained to Ms. Barber that he thought Mr. Lanier was "dangerous" (*Id.* at 10) and that Mr. Lanier "walked in mumbling, and couldn't explain what he was talking about clearly, and appeared to be incoherent." *Id.* at 11. Furthermore, Lieutenant Mark Whittle of the Tuscaloosa Police Department explained in a letter to Lanier that his investigation showed that Officer Green took action against Lanier because Lanier was acting "belligerent," was moving

in an "aggressive manner," and was "stumbl[ing] and [off] balance." *Id.* at 12. His letter also explained that Lanier was handcuffed "in an attempt to keep control while [Lanier] calmed down and [the police] determined whether or not [Lanier] was under the influence." *Id.* Whittle does admit that Lanier was not being questioned as a suspect, but that he was handcuffed because the situation was "escalating." *Id.* at 12-13.

The Motion to Re-Instate is opposed by Defendants. (Doc. 36, 37.) Defendants contend that Plaintiff should not be allowed to resubmit the complaint because it was not done in a timely manner. *Id.* Defendants also contend that even if the complaint is allowed it should be dismissed on qualified immunity grounds. *Id.* This Court will not address the timeliness of the Motion to Re-Instate because the motion is easily DISMISSED under qualified immunity.

III.   Standard.

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual

allegations"; however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).[1] The plaintiff must plead "enough facts to state a claim that is plausible on its face." *Id.* at 1974.

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable

---

[1] The Supreme Court in *Bell Atl. Corp. v. Twombly* abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson. See Bell Atl. Corp.*, 127 S. Ct. at 1968 (quoting *Conley,* 355 U.S. 41, 45-46 (1957)). The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp.,* 127 S. Ct. at 1969.

inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). A complaint has sufficient facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citations omitted). Furthermore, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on any possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citations omitted).

Claims that Plaintiff asserts pursuant to § 1983 must be subjected to the "heightened pleading" standard as articulated in *Dalrymple et. al. v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003). "[W]hile Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in framing its complaint, this circuit . . . has

tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998); *see also Dalrymple*, 334 F.3d at 996; *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003). "More than mere conclusory notice pleading is required. . . . A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Dalrymple*, 334 F.3d at 996 (citations omitted). "Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims. This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right. Accordingly, when reviewing a . . . motion to dismiss a § 1983 claim on qualified immunity grounds, we are guided both by the regular 12(b)(6) standard and by the heightened pleading requirement." *Id.* Simply put, to survive the Motions to Dismiss his § 1983 claims, Plaintiff must set forth, with some specificity, nonconclusory allegations of fact that would allow the court to determine whether qualified immunity is proper. Merely unsupported legal conclusions will not

satisfy this burden.

As to Plaintiff's state law claims, Alabama law also provides for qualified immunity to police officers from "tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." Ala. Code § 6-5-338. This statute "shields every defendant who (1) is a 'peace officer,' (2) is performing 'law enforcement duties,' and (3) is exercising judgment or discretion." *Howard v. City of Atmore*, 887 So. 2d 201, 204 (Ala. 2003).

IV. Analysis.

    A. Claims as to all of the Officers.

Plaintiff's new complaint has eleven separate counts, and all but Count 10 include allegations against two or more Tuscaloosa Police Officers ("Officers"). (Doc. 34 at 14-22.) While not all of the Officers are listed in each of the counts, the Court will assume, for purposes of this opinion, that all of the counts that apply to any individual officer apply to all of the Officers.

"A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." *Kingsland v. City of Miami*,

382 F.3d 1220, 1226 (11th Cir. 2004). "However, an action for impermissible arrest is barred if probable cause existed at the time of arrest." *Strickland v. City of Dothan*, 399 F. Supp. 2d at 1286 (M.D. Ala.2005) (citing *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003); *see also Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998); *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (explaining that probable cause constitutes an absolute bar to a § 1983 claim alleging false arrest).

"For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances." *Wood v. Kesler*, 323 F.3d at 878 (11th Cir. 2003) (quoting *Lee*, 284 F.3d at 1195). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (quoting *Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotation marks omitted)). "Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as

the facts necessary to support a conviction." *Id.* (quoting *Lee*, 284 F.3d at 1195 (internal quotation marks and citations omitted)).

The Eleventh Circuit requires an even less stringent standard than probable cause in the qualified immunity arena. The officer is required only to have had "arguable probable cause" to benefit from qualified immunity. *See Knight v. Jacobson*, 300 F.3d 1272, 1274 (11th Cir. 2002); *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995) ("to enjoy qualified immunity [the officer] need only have had arguable probable cause"); *Pickens v. Hollowell*, 59 F.3d 1203, 1206 (11th Cir. 1995) ("the appropriate inquiry for qualified immunity is . . . whether there was arguable probable cause"). Arguable probable cause exists when "the facts and circumstances [are] such that the officer reasonably could have believed that probable cause existed." *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997).

Plaintiff explains when describing the Officer Defendants in the new complaint that each was acting in his or her official capacity as an "officer on duty" (Green, Dutton, Guin, and Vickers)[2] and/or as a training officer

---

[2] These officers are heinafter referred to as the "on duty officers."

who serves as a "policy maker" (Swindle, Whittle, Green, and Vaughn)[3]. (Doc. 34 at 7.) Despite this Court's decision dismissing his original complaint (Doc. 30), Plaintiff does not allege any new facts sufficient to overcome qualified immunity. In fact, the new complaint has a section entitled "Facts Common to the Claims/Counts," which simply sets forth the same facts as the first complaint but with more specificity in regards to why the officers behaved the way that they did. (Doc. 34 at 8.)

It is established that a peace officer can have probable cause to arrest a person for public intoxication based entirely on the officer's sensory experience even in the absence of formal testing. *See, e.g., State v. Mitchell*, 722 So. 2d 814, 821 (Ala. Crim. App. 1998). Plaintiff's first complaint had just enough facts to demonstrate that Officer Green detained Plaintiff because of his appearance of intoxication. (Doc. 1 at 4.) Plaintiff has helped clarify the on duty officers' reasons for taking action against him in his newest complaint. Plaintiff made it clear that Officer Green felt that Lanier was intoxicated because he had red eyes, was acting belligerently, failed to speak clearly, and was hardly able to stand when he was inside the

---

[3] These officers are heinafter referred to as the "policy making officers."

police station. (Doc. 34 at 12-13.) These facts allow for an even more direct inference that Officer Green, and the other on duty officers, had probable cause to arrest Lanier than the first complaint's facts. Because the Officers had probable cause under the new facts alleged, it is necessarily the case that the facts meet the more lenient arguable probable cause standard required for qualified immunity.

Similarly, in the first complaint Plaintiff argued that Defendants' longstanding "customs and practices" violated his rights and created damages by allowing the practices that led to Lanier's temporary arrest. (Doc. 1.) However, the new complaint makes it clear that the on duty officers took reasonable steps to protect themselves from a "belligerent," seemingly intoxicated citizen, and that these reasonable actions were part of the training directed by the policy making officers. (Doc. 34 7-13.) Furthermore, Officer Whittle's internal investigation corroborated the on duty officers' testimony concerning the reason for making the temporary arrest. (Doc. 34 12-13.) Because all of the actions taken by the officers were reasonable and the on duty officers had at least arguable probable cause to restrain Mr. Lanier, Defendants' qualified immunity is retained and

Plaintiff has failed to present evidence sufficient to set aside this Court's prior order of dismissal.

B.  Claims as to the City of Tuscaloosa and Hon. Walt Maddox .

Ala. Code §11-47-190 provides as follows:

> No City or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways or buildings after the same had been called to the attention of the council[.]

Ala. Code § 11-47-190.

This statute provides two different bases for municipal liability in Alabama. The only basis applicable to this case is the alleged negligence of municipal employees acting in the line and scope of employment. Furthermore, § 11-47-190 limits municipal liability to negligence alone and does not provide for claims for intentional or wanton conduct. *See*, *Hilliard v. City of Huntsville*, 585 So. 2d 889, 892 (Ala. 1991) ("Section 11-47-190 limits the liability of municipalities to injuries suffered through 'neglect,

carelessness or unskillfulness.' ... To construe this statute to include action for wanton conduct would expand the language of the statute beyond its plain meaning."); *Franklin v. City of Huntsville*, 670 So. 2d 848 (Ala. 1995) (explaining that a municipality is legally incapable of acting with malice); *Cremeens v. City of Montgomery*, 779 So. 2d 1190, 1201 (Ala. 2000) ("A municipality cannot be held liable for the intentional torts of its employees."). Therefore, any state law tort and equity claims alleged by the plaintiff that rely on more than mere negligence are barred under § 11-47-190. Furthermore, the defendant's claims that rest on the negligence of the Tuscaloosa City Police officers are barred because of the immunity of the officers discussed above. *Ex parte City of Tuskegee*, 932 So. 2d 895, 910 (Ala. 2005) ("It is well established that, if a municipal police officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune.").

In regard to the claims regarding the Mayor of Tuscaloosa, Walt Maddox, the Supreme Court has held that local officials enjoy immunity from civil liability absent a particularized pleading of violative behavior. *Harlow v. Fitzgerald*, 457 U.S. 800, 818,(1982) ("[G]overnment officials

performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). Plaintiff's allegations regarding the Mayor are nothing more than wide sweeping, general, and conclusory statements designed to tie the Mayor into the rest of Plaintiff's allegations. This is not enough to bring a local official into a complaint, and therefore the claim against the Mayor must be dismissed.

Similarly, Plaintiff's federal respondeat superior liability claims are inappropriate because the law is clear that such liability does not attach to the municipality. *Monell v. New York City Dept. Of Social Services*, 436 U.S. 658 (1978); *Board of County Comm'rs of Bryan County, Okl. V. Brown*, 520 U.S. 397 (1997). Instead, Plaintiff must allege that a municipal policy or custom was the main factor leading to the deprivation of a federal right. *Id.*

Plaintiff has alleged in ths case that the training policies and procedures maintained by the Tuscaloosa Police force led to the deprivation of his federal rights. While it is true that the failure to train police officers properly may constitute a 'policy' upon which governmental liability may

rest, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989). In order to show this indifference, a plaintiff "must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

Plaintiff's claim that the training policies and procedures led to a deprivation of his right is unfounded. Plaintiff simply did not suffer a deprivation of a constitutional right since the police officers in question had at least probable cause. Because the officers following the procedures put forth by the city and its personnel acted only once probable cause was established, then it stands to reason that the procedures led to a proper exercise of police power. This is a far cry from the deliberate indifference required by the law.

IV.   Conclusion.

For the reasons stated herein, this Court denies Plaintiff's motion. A

separate order consistent with this Opinion is issued herewith.

Done this <u>8th</u> day of <u>June 2010</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671